IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILLIE WOOLSTENHULME,

    Petitioner,

v.                                              CIV 01-1031 WJ/KBM

LAWRENCE TAFOYA, Warden, and
ATTORNEY GENERAL for the State
of New Mexico,

    Respondents.

*and*

BILLIE WOOLSTENHULME,

    Petitioner,

v.                                                CIV 01-1265 WJ/KBM

TIM LeMASTER, Warden,
LAWRENCE TAFOYA, Warden, and
ATTORNEY GENERAL for the State
of New Mexico,

    Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
## AND
## VARIOUS ORDERS

Petitioner Billie Woolstenhulme Petitioner is no stranger to the court system. He has a lengthy criminal history that, based on the records before me, consists principally of property crimes in Oregon and New Mexico. He also makes himself available as an informant for law enforcement agencies.

Woolstenhulme previously filed for federal habeas relief with this court in a case styled CIV 00-1737 MV/KBM. District Judge Martha Vázquez dismissed the petition on August 2, 2001 for failure to exhaust an ineffective assistance of counsel claim. He then filed the above two habeas cases on September 6, 2001 and November 5, 2001, respectively. All of these actions were filed after the effective date of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), so its standards[1] apply to my analysis. *E.g., Paxton v. Ward,* 199 F.3d 1197, 1204 (10th Cir. 1999).

Petitioner moves to amend his current petitions, and asks that convictions be considered separately. *CIV 01-1031 (Docs. 29, 30, 31); CIV 01-1265 (Docs. 13, 14, 15).* These motions are granted insofar as below I will consider his amended petitions (hereinafter "*1031-Amended*" and "*1265-Amended*") and keep the cases unconsolidated.[2] However, I cannot ignore the inherent relationship between the two convictions.

Although the two actions before me are not consolidated because separate state convictions are the basis for each habeas petition, they are connected and share a complicated factual and procedural background. Furthermore, Petitioner's pleadings and claims overlap. For

---

[1] Under AEDPA standards, a federal court cannot grant a writ of habeas corpus unless: (1) the state court decision is "contrary to, or involved an unreasonable application of . . . Supreme Court" precedent; or (2) is "an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Williams v. Taylor,* 529 U.S. ___ , 120 S. Ct. 1495 (2000); *Van Woudenberg v. Gibson,* 211 F.3d 560, 566 & n. 4 (10th Cir. 2000), *cert. denied,* 531 U.S. 1161 (2001).

[2] These amended petitions are attached to the motions. *See CIV 01-1031 (Doc. 31)*, "Amended Petition"; *CIV 01-1265,* "Amended Petition". The amended petitions are not numbered sequentially. According to my count, *1031-Amended* consists of 16 pages of petition and exhibits and *1265-Amended* consists of 66 pages of petition and exhibits. Any citations to the amended petitions herein refer to pages as though the documents had been numbered sequentially.

2

ease of analysis, therefore, I consider both cases in this one set of findings and recommend that the petitions and amended petitions be denied.

Petitioner also asks that the Court order additional transcripts. *CIV 01-1031 (Doc. 30); CIV 01-1265 (Doc. 15).*[3] However, all of the issues in both cases can be fully resolved on the records presently before me, and I find further supplementation or an evidentiary hearing unnecessary. *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rules 7, 8(a), *Rules Governing Habeas Corpus Under Section 2254.* Therefore, the motion to supplement is denied.

## I. Factual Background In State Court

### A. 1997 Sentence of Probation Pursuant To Plea Agreement

In a written plea agreement executed on April 2, 1997, Woolstenhulme pleaded guilty to six counts of fraud-related crimes and one count of possession of a stolen vehicle, all in violation of various New Mexico statutes.[4] He also admitted his identity as the person convicted of eight prior crimes in Oregon.

The agreed-upon sentence for this plea was seven-years incarceration based solely on the New Mexico counts without consideration of potentially applicable habitual offender penalties. However, the agreement called for the entire sentence to be suspended and Petitioner would instead receive five years supervised probation. The agreement specifically advised Petitioner, however, that if he "later violates that probation, he may be incarcerated for the balance of the

---

[3] Specifically, transcripts in the state criminal proceeding in CR 96-3125/96-3657/97-962 for the 4/2/97 entry of plea hearing, 8/17/97 sentencing hearing, and 2/10/99 and 4/1/99 probation revocation hearings.

[4] The state case numbers underlying this agreement were 96-3125, 96-3657, and 97-962.

3

sentence." Most importantly, as to his status as an habitual offender, the agreement also specifically advised him that

> if he violates any law after he enters this plea and before he completes his sentence in this case, he will be subject to habitual offender proceedings based on the convictions listed under "Admission of Identity." The State also may bring habitual offender proceedings if the defendant violates any condition of probation or parole.

*CIV 00-1265, Doc. 8,* Exh. B (hereinafter "*1265 Answer*").

The signature on the line provided for the defendant is unusual. Defense counsel Anthony Ayala would later testify and explain that instead of dating and signing the line for counsel, he accidentally started signing on the line for defendant. Recognizing his mistake, Ayala stopped and signed the next line provided for defense counsel. According to Ayala, Petitioner then signed over the top of his mistaken signature. *CIV 00-1031, Supplemental Record Proper, Transcript of Proceedings 12/15/99* at 9 (hereinafter "*12/15/99 Transcript*").

New Mexico District Judge Albert S. "Pat" Murdoch conducted a plea hearing on the same day the agreement was signed.[5] At this 1997 plea hearing, Judge Murdoch went through the entire plea agreement in detail, and Petitioner affirmed his understanding and acceptance of its terms. Moreover, Judge Murdoch specifically asked Woolstenhulme if the signature was his. He replied it was. When the Judge Murdoch made a comment about how the signature looked, Petitioner again indicated it was his. *Id.* at 53-54. Four months after the plea hearing, Petitioner was sentenced according to the terms of the agreement and began his period of probation. *See 1265 Answer, Exh. A.*

---

[5] Much of the transcript of that hearing was read into the record at a subsequent hearing in December 1999.

### B. *1999 Motions To Revoke Probation And Indictment for a 1998 Burglary*

In February 1999, the State sought to revoke Woolstenhulme's probation for "failing to report as often as requested and/or failing to submit truthful written reports between the first and fifth of each month." *Id.,* Ex. C. Ayala represented Petitioner in these proceedings. On March 5, 1999, Judge Murdoch found Petitioner violated his terms of probation, but only sentenced him to another term of probation. *Id.*

Within two weeks, Judge Murdoch received yet another probation violation report and requested the District Attorney to prepare a second motion to revoke probation. It did, citing as the violation harboring a fugitive in February and associating with a person having a criminal record. *Id.,* Exh. D (3/19/99 motion), Exh. M (3/17/99 order on violation report). Again represented by Ayala, Petitioner opposed the State's motion, asserting that he had been working as a confidential informant for law enforcement during the time of these alleged violations. *Id.,* Exh. O (5/3/99 brief in opposition to probation revocation). Before the court acted upon the second motion, the District Attorney filed an amendment to their second motion. On April 2, 1999, the State also sought revocation alleging that Petitioner had committed a commercial burglary in 1998. *Id.,* Exh. N (emphasis added).

In June 1999, a New Mexico grand jury indicted Petitioner for commercial burglary and larceny of the "Menaul TV" store on November 11, 1998. The state case number for the charges arising from this indictment is 99-2131. *CIV 00-1031, Record Proper* at 1 (hereinafter "*1031 RP*") (emphasis added).[6]

---

[6] The amendment contains a typographical error since it lists March 1999 as the date of the commercial burglary. It is apparent from Petitioner's amended filings that the amendment was

5

Ayala did not represent Petitioner on the separate case involving the indictment. Other attorneys represented Petitioner at arraignment after which the court set trial on December 13, 1999 before Judge Ross C. Sanchez. *1031 RP* at 1; *see also CIV 00-1031, Supplemental Record Proper, Transcript of Proceedings 7/23/99 and 8/6/99* (hereinafter "*Arraignment Transcript*") As of September, first the public defender, and then Kathleen Rhinehart, entered appearances for Woolstenhulme. *1031 RP* at 33, 34.

Even though the state probation revocation and indictment were separate proceedings under separate numbers, the record reflects that plea negotiations caused the two proceedings to begin to overlap. The possibility of a habitual offender enhancement proving to be a sticking point. Woolstenhulme was facing upwards of forty years for violating his probation under the written terms of the plea agreement.

### *C. Motion To Withdraw The 1997 Plea*

On November 22, 1999, Petitioner acting *pro se* sent a motion to withdraw the 1997 plea to the District Attorney and the state district court where he alleged that:

1. At sentencing on July 21, 1999, the Habitual Offender proceedings were never mentioned, verbally or in the written sentencing order.

2. Defendant never entered into a valid agreement to subject himself to habitual offender proceedings in the event of a probation violation.

3. Defendant attorney may have misled people into believing that Defendant entered into such an agreement, when in fact the Defendant did not enter into such an agreement.

---

based on the 1998 burglary. According to Petitioner's chronologies, the March 1999 date may be the date the District Attorney was made aware of the surveillance tape that recorded the burglary. *E.g., 1031 Amended* at 5 (paragraphs 1-3.a.)*; 1265 Amended* at 26 (paragraphs 9-12)*.*

*1265 Answer,* Exh. E. The reference to "July 1999" is probably a typographical error and apparently correlates with the 1997 sentencing held on July 24th. *1265 Answer,* Exh. A; *see also 1265 Amended* at 25-26.

At the probation revocation hearing on December 15, 1999, Judge Murdoch first took evidence on Woolstenhulme's motion to withdraw the 1997 plea for which the probation term had been imposed. Although Ayala had initially represented Petitioner on the probation revocation, he withdrew his representation and testified at that hearing in connection with Woolstenhulme's motion to withdraw the 1997 plea *Cf. 12/15/99 Transcript* at 50-51; *CIV 00-1031, Supplemental Record Proper, Transcript of Proceedings 12/17/99* at 34 (hereinafter "*12/17/99 Plea Transcript*"). Woolstenhulme also testified as the circumstances surrounding the 1997 plea. Judge Murdoch then took evidence related to the burglary allegedly constituting a violation of Petitioner's probation. The proceedings adjourned at the end of that day. *See 12/15/99 Transcript.*

### D. Subsequent Plea To Resolve Both The Burglary And Probation Violation Charges

When the court reconvened two days later on Friday, December 17th, the parties took the first hour of the hearing to continue to negotiate. They arrived at an agreement whereby Woolstenhulme would plead guilty to the indicted burglary charge in 99-2131 and would also admit to having violated his probation. Judge Murdoch consolidated the two cases for plea purposes and conducted the plea hearing that day. *1031 RP* at 36; *see also 12/17/99 Transcript* at 3.

Under the terms of this 1999 plea agreement, for the violation of his probation, Woolstenhulme would receive the original seven-year sentence, plus an additional sixteen-year

7

habitual offender enhancement based upon the Oregon crimes he admitted to in 1997. Certain credits for jail time and probation time would reduce the total sentence to eighteen years incarceration minus 262 days, followed by a term of parole. For the 1998 burglary, he would receive an 18-month consecutive sentence without any enhancement for being a habitual offender. The burglary sentence was to be suspended with a eighteen month term of probation to run concurrently with the parole term. As before, habitual offender penalties would follow should Woolstenhulme violate his probation for the burglary conviction. *See 12/17/99 Transcript* at 2-7, 10; *see also 1031 RP* at 37-42 (written plea agreement).

In painstaking detail, Judge Murdoch went through the terms of the agreement and the rights Woolstenhulme was waiving. Petitioner informed Judge Murdoch of his satisfaction with Rhinehart, the factual basis for his admission of guilt, and acknowledged on the record that he was signing the plea agreement in open court. At every step in this questioning by Judge Murdoch, Petitioner acknowledged his understanding of the terms of the agreement, its consequences, and desire to enter the plea. *See 12/17/99* at 10-33.

The court entered judgments in both cases, on January 4, 2000 on the charges underlying the 1997 plea and on January 5, 2000 on the burglary indictment. *See 1265 Answer,* Exh. F.; *1031 RP* at 43. As to the revoked probation, the judgment notes that the seven-year resurrected sentence and the sixteen year habitual offender enhancement total twenty-three years, but the actual term of imprisonment as reduced is expressed in terms of 6308 days.[7]

---

[7] Defendant is to receive 262 days credit for pre-sentence confinement and 876 days credit for time served on probation, leaving a balance of 7257 days. Execution of 949 days of defendant's sentence is suspended without condition, leaving an actual term of imprisonment of 6308 days.

*1265 Answer,* Exh. F. Eighteen years imprisonment at 365 days a year amounts to 6570 days, and

8

## II. Procedural Background In State Court
## Results In Independent Review On Merits Under AEDPA

Within a few months of entry of judgment, Petitioner engaged another attorney to file a motion to reconsider sentence. This attorney asserted "additional mitigating factors to bring to the Court's attention" as the basis for the motion. Judge Murdoch held a hearing and denied the motion, finding that because the plea agreement was for a specific sentence and the District Attorney did not concur with a reduction in sentence, he was without authority to grant the motion. *1265 Answer,* Exhs. G-H.

Within days of this denial, Petitioner began filing a flurry of overlapping state and federal habeas petitions. Each of his four state petitions was summarily denied by Judge Murdoch and the New Mexico Supreme Court denied certiorari.[8] Although Judge Murdoch's summary

---

6570 minus 262 days as promised equals 6308 days imprisonment or the amount imposed by this sentence.

[8] On August 17, 2000, Judge Murdoch denied Petitioner's first state habeas petition on 96-3125 etc. saying: "Petitioner is conducting a 'fishing expedition' in his continuing efforts to manipulate the system. Petitioner received 'the deal of the century' but could not cease his criminal behavior." *1265 Answer,* Exh. J; *see also id.* Exh. I (petition); Exh. K (petition for cert.); Exh. L (denial of cert. 10/17/00).

On September 27, 2000, Judge Murdoch denied Petitioner's second post-conviction "request for relief" on 99-2131 saying: "This petitioner is more knowledgeable of the system than most. He entered this plea freely and voluntarily and now seeks to manipulate the system. Such groundless motions are a waste of precious court time and resources." 1031 RP at 65; *see also id.* at 48-63 (petition for relief). Instead of pursuing an appeal, Petitioner filed another motion for relief or for habeas corpus with respect to the 99-2131 sentence. *Id.* at 67- 88. On June 19, 2001, Judge Murdoch denied this petition saying: "Evidence presented at the probation violation hearing was clear and convincing. Notices were appropriately sent to the defense attorney and the delay spoken of is reasonable under the bizarre and complicated situation that Mr. Woolstenhulme created for himself. Any points raised but not addressed are to be considered denied." *Id.* at 88. Petitioner filed two petitions for certiorari in June 2001. *1265 Answer,* Exh. S; *1031 Answer,* Exh. G. The New Mexico Supreme Court ordered a response before denying certiorari on August 13, 2001. *1265 Answer,* Exhs T-V.

Woolstenhulme then filed a fourth state habeas petition challenging 96-3125 which Judge Murdoch denied on September 14, 2001 saying that Woolstenhulme "takes a 'shotgun' approach

9

dispositions require this Court to engage in an "independent" review under AEDPA, the state court's result is entitled to deference. *E.g., Pickens v. Gibson,* 206 F.3d 988, 997 (10th Cir. 2000).

Also, unlike Petitioner's first habeas case, Respondents do not question exhaustion or raise a procedural default issues as to the two cases at bar. Rather, Respondents maintain that Petitioner's claims are without merit and ask that the petitions be dismissed with prejudice. *See 1031 Answer* at ¶¶3, 6-7; *1026 Answer,* ¶¶ 3, 7-8. Even if claims in the amended petitions are technically unexhausted, federal habeas courts have authority to deny unexhausted claims that lack merit. *E.g., Van Woudenberg,* 211 F. 3d at 569; *Brown v. Shanks,* 185 F. 3d 1122, 1123 (10th Cir. 1999); 28 U. S. C. § 2254( b)( 2). I elect that course here, as opposed to requiring additional useless litigation in the state courts. *Grandberry v. Greer,* 481 U. S. 129, 133 (1987). Accordingly, I turn to a review of the claims Woolstenhulme raises in his amended petitions.

### III.  Analysis

The records are replete with lengthy documents by Petitioner. I have reviewed the entire records of both cases in detail, construed all of Petitioner's pleadings liberally, and considered all of the claims raised therein independently. Per his amended petitions, the only claim Woolstenhulme is raising in CIV 01-1031 is speedy trial. In CIV 01-1265, he raises many separately-numbered claims based on theories ranging from ineffective assistance of counsel, to cruel and unusual punishment, to violation of due process and equal protection. The basis for all

---

. . . raising a variety of grounds without basis in law or fact; assistance of counsel was patient and effective; prosecution was not vindictive but fair in every regard; sentence imposed was legal and appropriate under the circumstances. Any grounds raised but not specifically addressed are deemed denied." *Id.,* Exh. X; *see also id.,* Exh. W (petition); Exh. Y (petition for certiorari); Exh. Z (denial of certiorari 10/9/01).

of these various claims generally fall into two categories. First, Woolstenhulme raises procedural or other such issues that I conclude are of no constitutional magnitude or consequence.

Second, Woolstenhulme's many and verbose claims reiterate the same arguments he raised in the state court in an attempt to withdraw his 1997 plea. To briefly summarize, Petitioner maintains that the deal he thought he was getting in 1997 was a seven-year suspended sentence without any consequences whatsoever for being a habitual offender. He claims that on the morning of the plea, a different district attorney showed up with an agreement that discusses his habitual offender status. When Woolstenhulme questioned the plea agreement, Ayala purportedly told him that if he wanted to walk out of court that day, he should just sign the agreement and go along with everything. Ayala also allegedly told Woolstenhulme that after sentence was entered, he would go back and straighten out the habitual offender issue. Thus, Petitioner claims that although he began to sign the plea, he had reservations about a possible later habitual offender enhancement and though Ayala would change the terms of the plea later.

Petitioner is also of the view that the State wanted to revoke his probation because the District Attorney and Judge Murdoch were mad at him for failing to follow through on a drug deal where he was working as a confidential informant. Woolstenhulme says that he refused to continue because he was allegedly stabbed during his undercover activities and was fed up with the danger. It appears Petitioner maintains he was hospitalized in the summer of 1999 with these wounds, and not on escape status as the state courts believed. *See 1265 Amended* at 26-27; *7/23/99 Arraignment Transcript.*

All of these arguments ignore the key fact that the 1999 plea occurred ***after*** the events of which Woolstenhulme complains. The December 17, 1999 transcript reveals that Judge Murdoch conducted a very thorough and searching plea colloquy during which Woolstenhulme

11

admitted to the burglary, the probation violation, and his habitual offender status. All of these admissions dispose of any challenges he had to the 1997 plea or other preceding events. Moreover, there is no contention, nor could there be given that transcript, that Woolstenhulme's entry of the 1999 guilty pleas was anything but voluntary.

In other words, the 1999 plea essentially made everything else a "collateral pre-plea matter" that cannot provide a basis for habeas relief when there is no question of (and can be no question of) jurisdiction. *C.f. Tollett v. Henderson,* 411 U.S. 258, 267 (1973) ("a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *Osborn v. Shillinger,* 997 F.2d 1324, 1327 (10th Cir. 1993) (citing *Tollett,* among other decisions). Furthermore, the transcript of the December 15, 1999 hearing establishes Judge Murdoch's implicit findings that the 1997 plea was knowing and voluntary are neither contrary to Supreme Court precedent or unreasonable under AEDPA standards.

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petitions and amended petitions in CIV 01-1031 and CIV 01-1265 be denied and these actions dismissed with prejudice.

**IT IS FURTHER ORDERED** that Petitioner's motions to amend and consider the convictions separately are granted in part and denied in part, *CIV 01-1031 (Docs. 29, 30, 31); CIV 01-1265 (Docs. 13, 14, 15);* his motions asking the Court order additional transcripts are denied, *CIV 01-1031 (Doc. 30); CIV 01-1265 (Doc. 15);* and his motion for a preliminary injunction/temporary restraining order requiring the warden to provide him with a typewriter to

prepare his pleadings is denied, *CIV 01-1031 (Doc. 12)*.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE